IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-00276-RBJ

LAURA LEE HOWARD,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security

    Defendant.

# ORDER

This matter is before the Court on review of the Social Security Administration Commissioner's partial denial of claimant Laura Lee Howard's application for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court REVERSES and REMANDS the decision for further consideration.

## STANDARD OF REVIEW

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the District Court examines the record and determines whether it contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). A decision is not based on substantial evidence if it is "overwhelmed by other

evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Reversal may also be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## BACKGROUND

**1. Medical Background.**

Ms. Howard is 57 years old and lives in Fountain, Colorado. R. 145, 490. After receiving two years of college education, Ms. Howard worked as a veterinary technician at an equine veterinary hospital from 1999 until 2005. R. 174. From 2005 until her alleged disability onset date of July 5, 2011, Ms. Howard worked as a part-time bookkeeper at her ex-husband's legal process server business. R. 179. She described the bookkeeping job as one that was "tailor-made" for her because she was permitted to work from home on days when she felt too unwell to go into the office. R. 37. Ms. Howard stated that this job ended in 2011 when her ex-husband terminated her as a result of their divorce. R. 37. She has not sought employment since 2011 and states that this is because her health impairments limit her ability to work. *Id.*

Ms. Howard claims that she suffers from the following ailments: degenerative disc disease of the cervical and lumbar spines; degenerative joint disease of the right hip; chronic pain syndrome (neck, shoulders, back, and back of legs); hypertension; carpal tunnel syndrome; left adrenal adenoma; left hip degenerative changes; allergies; arthritis; and chronic recurring headaches. R. 173, 327. She has undergone several surgeries to treat some of these issues. In 2010, Ms. Howard had bunion removal surgery on her right foot. R. 297. In December 2010

and January 2011 Ms. Howard underwent carpal tunnel release surgeries on both hands. R. 327. And in November 2015 Ms. Howard underwent a right hip replacement surgery. R. 332.

Ms. Howard claims that her ailments make it difficult to do "everyday things" such as getting dressed, using the restroom, and getting into cars. R. 48–49. She claims that she cannot sit or stand for periods of longer than twenty minutes without the pain becoming so bad in her back and legs that she has to change positions. R. 398. In addition, she claims that her pain and/or medications cause "brain fog," which she describes as including short-term memory issues and an inability to concentrate. R. 393–95.

2. **Procedural History**.

Ms. Howard applied for disability insurance benefits and supplemental security income benefits on July 3, 2012. R. 145–58. After her applications were administratively denied on November 15, 2012, Ms. Howard requested a hearing before an administrative law judge ("ALJ"). R. 72–77, 78–79. On October 16, 2013 a hearing was held before ALJ Debra Boudreau in Colorado Springs, Colorado. R. 31–57. The ALJ issued a decision denying benefits on October 24, 2013. R. 15–27. Ms. Howard timely appealed the decision to the Appeals Council, which denied review on January 27, 2015. R. 1–6, 13–14. However, in response to the Commissioner's voluntary request for a reversal of the Social Security Commission's November 2012 decision, on September 2, 2015 the United States District Court reversed and remanded Ms. Howard's claims for further proceedings. R. 436–42. The Appeals Council issued an order with remand instructions to the ALJ on October 6, 2015. R. 443–48.

On April 12, 2016, in accordance with the remand order, a second hearing was held before the ALJ. R. 383–416. During this hearing, medical expert Dr. Arthur Lorber noted that

he had not received two of the exhibits prior to the hearing and therefore could not make a finding at that time. R. 412. As a result, the ALJ scheduled a supplemental hearing to ensure that Dr. Lorber had adequate time to review all of the exhibits; this hearing was held on August 25, 2016. R. 342–382, 415. During the supplemental hearing, the ALJ expressed her concerns about the credibility of treating physician Dr. Sheldon Ravin's opinions about Ms. Howard's claim.[1] After raising these concerns, the ALJ kept the case open to give Ms. Howard the opportunity to submit additional exhibits in which Dr. Ravin could clarify his opinions. R. 371–72, 380.

On November 21, 2016 the ALJ issued a partially favorable decision, finding that Ms. Howard was disabled and entitled to benefits for only a portion of the period in which Mr. Howard claimed disability. R. 319–41. Ms. Howard appealed the decision to the Appeals Council but it declined review. ECF No. 1 at ¶ 2. Because the Appeals Council declined review of this decision, it serves as the Commissioner's final decision for purposes of this Court's review. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Ms. Howard filed a timely appeal in this Court, and the issues have been fully briefed. ECF Nos. 1, 15–17.

3. **The ALJ's Decision.**

The ALJ's November 2016 decision was partially favorable. R. 319. In making this determination, the ALJ followed the Social Security Administration's standard five-step process. First, the ALJ found that Ms. Howard had not engaged in substantial gainful activity since her alleged onset date of July 5, 2011. R. 327. At the step two, the ALJ found that Ms. Howard had

---

[1] During the hearing, the ALJ noted that Dr. Ravin's residual functioning capacity ("RFC") opinions did not list examination dates and only "sort of" referenced exam findings, and she alluded to her belief that Dr. Ravin's "extreme" opinions were unrealistic. R. 371.

two severe impairments: degenerative disc disease of the cervical and lumbar spines, and degenerative joint disease of the right hip. R. 327. At step three, the ALJ concluded:

1. From the alleged onset date of July 5, 2011 through September 21, 2014, Ms. Howard did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments alleged onset date of disability ("a Listing"). Further, the ALJ found that Ms. Howard had the residual functioning capacity ("RFC") to perform light work during this time period.

2. From September 22, 2014 through March 10, 2016, Ms. Howard's right hip degenerative joint disease became severe enough that it *did* meet Listing 1.02A. As such, Ms. Howard is entitled to disability benefits for this period.

3. From March 11, 2016 onward, Ms. Howard's right hip no longer met a Listing. The ALJ held that medical evidence and Ms. Howard's own testimony showed that Ms. Howard's hip had medically improved and positively impacted Ms. Howard's ability to engage in substantial gainful activity. Therefore, Ms. Howard's right hip impairment no longer meets or medically equals a Listing. Additionally, the ALJ found that none of Ms. Howard's other impairments meet a Listing. Finally, the ALJ determined that Ms. Howard has an RFC to perform light work.

R. 328–32.

At step four, the ALJ found that from the alleged onset date of July 5, 2011 until September 21, 2014, and beginning again in March 11, 2016 until present, Ms. Howard had and again has the capability to perform her past relevant work as a bookkeeper. R. 334. Therefore,

she is not entitled to disability benefits for the periods before and after September 22, 2014 through March 10, 2016. R. 334. Based on this finding, the ALJ did not proceed to step five.

## ANALYSIS

Ms. Howard contends that the ALJ erred in the following ways: (1) failing to follow the Appeals Council's remand instruction to consider Ms. Howard's chronic pain syndrome; (2) failing to evaluate the combined effect of Ms. Howard's impairments in determining whether she was disabled prior to September 22, 2014 or after March 10, 2016; (3) failing to properly consider medical sources' opinions; and (4) failing to assess Ms. Howard's credibility in accordance with substantial evidence. The Court will discuss each argument in turn.

### 1. **Compliance with the Appeals Council's Order.**

Ms. Howard argues that the ALJ failed to follow the Appeals Council's explicit instruction to consider Ms. Howard's chronic pain syndrome on remand, and that the failure to follow this instruction constitutes reversible error in and of itself. [2] I disagree.

The Appeals Council's remand order stated in relevant part:

"The Appeals Council hereby vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for resolution of the following issue:

. . . In this case, the Administrative Law Judge found that the claimant had numerous medical determinable impairments, none of which was severe in nature. Evidence of record, however, suggests that the claimant's degenerative disc

---

[2] I note that there has been some disagreement as to whether federal courts have jurisdiction to hear challenges concerning an ALJs' compliance with Appeals Council instructions. *Compare Gallegos v. Apfel*, No. 97–2267, 1998 WL 166064, at *2 (10th Cir. Apr. 10, 1998) (unpublished) (holding that the Court did not have jurisdiction to hear such a case), *with Rice v. Apfel*, No. 99–1422, 2000 WL 1701446, at *6 (10th Cir. Nov. 14, 2000) (unpublished) (hearing such a case). However, in accordance with the reasoning espoused in my decision in *Gonzales v. Colvin*, I find that I have jurisdiction to review this claim. 213 F. Supp. 3d 1326, 1330 (D. Colo. 2016) (After *Gallegos*, "subsequent Tenth Circuit opinions have assessed ALJs' adherence to Appeals Council remands without second-guessing the court's ability to hear these cases, suggesting that the approach in *Gallegos* is not the law of this circuit.").

> disease of the lumbar and cervical spine may cause more than minimal limitations in the claimant's ability to perform basic work activities . . . . Doctors also appear to have diagnosed the claimant with a *chronic pain disorder* and fibromyalgia, but the decision does not address these conditions (Exhibit 11F). *Further evaluation of the nature, severity, and limiting effects of the claimant's physical impairments is necessary.*"

R. 445 (emphasis added).

Ms. Howard interprets this as an explicit instruction from the Appeals Council that the ALJ should "address whether or not Ms. Howard's chronic pain syndrome was a severe or non-severe impairment." ECF No. 15 at 6. But, as Ms. Howard points out, the ALJ failed to reference chronic pain syndrome at any point in her decision. *Id.* Ms. Howard argues that I should thus find reversible error on the basis of the ALJ's failure to comply with the Appeals Council's order alone. *Id.* at 8–9.

Ms. Howard's argument fails under established Tenth Circuit law. It is true that in the event the Appeals Council orders a remand, an ALJ "shall take any action that is ordered by the Appeals Council." 20 C.F.R. § 404.977(b). However, in *Miller v. Barnhart*, the Court held that when the ALJ's decision stands as the final decision of the Commissioner, federal courts should review the ALJ's decision under the usual Social Security appeals standards "rather than focusing on conformance with the particular terms of the [Appeals Council's] remand order." 175 F. App'x 952, 956 (10th Cir. 2006) (unpublished). An ALJ's decision stands as the final decision of the Commissioner when the Appeals Council declines to review the ALJ's decision.

In this case, as noted above, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined Ms. Howard's appeal. It would therefore be improper for me to focus my review on the ALJ's "conformance with the particular terms" of the Appeals Council's remand order, which is precisely what Ms. Howard asks me to do. *Miller*,

7

175 F. App'x at 956.  Instead, I must review the ALJ's decision in accordance to the "usual" standard of review, namely the substantial evidence standard.  *Id.*  As such, I deny Ms. Howard's request to reverse and remand the ALJ's decision on the basis of the ALJ's noncompliance with the Appeals Council's order alone.

### 2. **Consideration of All Impairments.**

Next, Ms. Howard argues that the ALJ's failure to consider her chronic pain syndrome at steps two, three, and four was reversible error under the substantial evidence standard.  ECF No. 15 at 14–17.  This argument is different from the issue discussed above, because here Ms. Howard argues that the ALJ's failure to consider chronic pain syndrome undermined the overall evaluation of the evidence, *not* that the ALJ's failure to follow the Appeals Council's directive to consider chronic pain syndrome was an error in itself.  *See id.*  After reviewing the relevant case law, I hold that (1) the ALJ's failure to consider chronic pain syndrome at step two was harmless error, but (2) the ALJ's failure to discuss chronic pain syndrome at steps three and four warrants remand.

#### A. *Step Two.*

At step two, an ALJ is required to determine whether any of the claimant's impairments are "severe."  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing 20 C.F.R. § 404.1520(c), § 416.920(c)).  If an ALJ determines that the claimant does not have a severe impairment at step two, the ALJ must find that the claimant is not disabled and deny benefits.  *Id.*  However, if the ALJ determines that one or more of the claimant's

impairments are severe at step two, the ALJ must proceed to step three of the five-step disability determination analysis. *Id.*

Here, the ALJ determined that Ms. Howard had two severe impairments at step two: degenerative disc disease of the cervical and lumbar spines, and degenerative joint disease of the right hip. R. 327. As such, the ALJ proceeded to step three of the analysis. Nevertheless, Ms. Howard alleges the ALJ's failure to consider her chronic pain syndrome at step two is reversible error. *Id.* at 14.

Ms. Howard's argument is unavailing under the Tenth Circuit's decision in *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016), where the Court held that an ALJ's "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment severe." This is so because an ALJ's finding that even a single impairment is severe means that the ALJ may not deny benefits at step two, but instead must proceed to step three where she will consider the combination of all of the claimant's impairments, not just those deemed to be severe. *Id.* Therefore, the claimant suffers no harm from an oversight at step two if another impairment is deemed severe because the ALJ will consider all of the impairments anew once she arrives at step three. While it certainly would have been prudent for the ALJ to consider Ms. Howard's chronic pain syndrome diagnosis at step two—particularly in light of the Appeals Council's directive—the ALJ's failure to do so is not reversible error under *Allman* because she determined that two of Ms. Howard's other impairments were severe. *See id.* at 1330.

### B. *Steps Three and Four.*

Ms. Howard further argues that the ALJ's failure to consider chronic pain syndrome at steps three and four is reversible error. I agree.

At step three, the ALJ is required to ask whether any of the claimant's impairments determined to be severe at step two—either alone or *in combination with other impairments*—are "equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007) (referencing 20 C.F.R. Part 404, Subpart P, Appendix 1) (emphasis added). If a claimant can show that her combined impairments are equivalent to a listed impairment ("Listing"), she is presumed to be disabled and is entitled to benefits. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988). If a claimant's combined impairments do not meet a Listing at step three, the ALJ's analysis continues to step four. Step four requires the claimant to show "that the impairment *or combination of impairments* prevents him from performing his past work." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir.2005) (emphasis added).

As is apparent from these standards, it is incumbent upon the ALJ to consider *all* of a claimant's health impairments—including those deemed non-severe—when determining if she is disabled. Though an ALJ is not required to discuss every piece of evidence in the record in her decision, the ALJ must discuss uncontroverted evidence she chooses not to rely upon and any significantly probative evidence she rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)).

Here, the record is filled with unconverted evidence concerning Ms. Howard's chronic pain syndrome. When Ms. Howard filed her initial claim for disability on July 3, 2012, the first

disabling condition she listed was "chronic pain syndrome." R. 66. The administrative record includes over twenty medical documents showing Ms. Howard's chronic pain syndrome diagnosis and related treatment.[3] At no point was this diagnosis contested as invalid or as subject to doubt. Further, Ms. Howard discussed her chronic pain at each of her three hearings before the ALJ. R. 342–82, 383–416, 449–75. Finally, the Appeals Council expressly noted that Ms. Howard was diagnosed with a chronic pain disorder and directed the ALJ to "further evaluat[e] the nature, severity, and limiting effects" of the impairment in the remand order. R. 445.

Despite all of this uncontroverted evidence, the ALJ did not discuss Ms. Howard's chronic pain syndrome diagnosis at any point in the 17–page determination.[4] This is reversible error. Had the ALJ considered this evidence, perhaps the ALJ might have found that Ms. Howard's chronic pain syndrome in combination with her other impairments met a Listing at step three, or that the combined effect of the impairments rendered Ms. Howard unable to perform her past job as a bookkeeper at step four. Alternatively, in the event that the ALJ did

---

[3] Ms. Howard's chronic pain syndrome diagnosis appears in the record at the following locations:
   Dr. Ravin's treatment notes: 08/05/16 (R. 840), 07/11/16 (R. 841–42), 05/11/16 (R. 847–48), 04/6/16 (R. 849–50), 04/21/14 (R. 670), 03/11/14 (R. 685), 01/21/14 (R. 668), 10/23/13 (R. 665), 09/11/13 (R. 254–55), 06/24/13 (R. 256–57), 03/25/13 (R. 259–60), 01/02/13 (R. 266), 10/02/12 (R. 267), 07/09/12 (R. 193).

   Nurse Practitioner Leah Derksen's treatment notes: 04/17/12 (R. 194), 02/16/12 (R. 195), 12/05/11 (R. 196), 08/29/11 (R. 197), 04/18/11 (R. 199), 06/06/11 (R. 198).

   Dr. Ronald Laub's treatment notes: 08/24/11 (R. 216–17), 06/29/11(R. 219–20), 05/09/11 (R. 222–23), 03/14/11 (R. 225–26), 01/26/11 (R. 228–29).

[4] The ALJ did use the word "pain" a few times throughout her decision, but it was mentioned in the context of symptoms that Ms. Howard self-reported during appointments or at the hearings. Even in giving the benefit of the doubt to the ALJ, I cannot interpret these passing references to "pain" as the ALJ's consideration of Ms. Howard's chronic pain syndrome. *See* R. 319–41.

consider the evidence but found it unpersuasive or objectionable, the ALJ still had a duty to explain her reasons for rejecting it. *Chater*, 79 F.3d at 1009–10. Based on the ALJ's decision before me, I simply have no way of knowing if or how the ALJ evaluated this evidence.

Without having an explanation from the ALJ concerning her treatment of the evidence of Ms. Howard's chronic pain syndrome, I cannot assess whether the ALJ's conclusion complies with the substantial evidence standard. Therefore, the case must be remanded for the ALJ to set out her specific findings as it relates to Ms. Howard's chronic pain syndrome.

### 3. **Consideration of Medical Sources' Opinions.**

In addition, Ms. Howard argues that the ALJ erred in her treatment of medical source opinions. Specifically, Ms. Howard takes issue with the ALJ's reliance on medical examiner Dr. Lorber's opinions instead of the opinions of Ms. Howard's treating physician, Dr. Ravin. Because this case will be remanded for the ALJ to consider the impact that Ms. Howard's chronic pain syndrome has on her overall disability, the ALJ will necessarily need to reconsider the medical source opinions on remand. Therefore, at this point I will just make two brief comments without deciding the issue.

First, in regard to chronic pain syndrome evidence, the ALJ failed to discuss Dr. Laub's or Nurse Practitioner Derksen's diagnoses of Ms. Howard's chronic pain syndrome. *See* R. 319–41. An ALJ is required to evaluate every medical opinion she receives. 20 C.F.R. §§ 404.1527(c), 416.927(c). The failure to do so is reversible error. *Id.* Therefore, I order the ALJ to discuss her treatment of Dr. Laub's and Nurse Practitioner Derksen's medical opinions in her forthcoming determination.

Second, despite Ms. Howard's argument to the contrary, I find that the ALJ properly defended her decision to not give controlling weight to treating physician Dr. Ravin's medical opinions. While the opinion of a treating source is generally given controlling weight, 20 C.F.R. §§ 404.1527, 416.927, an ALJ can give less than controlling weight to the treating source's opinions if she "gives good reasons in [the] notice of determination." *Id.* Here, in explaining why she found that Dr. Ravin's opinions were not entitled to controlling weight, the ALJ noted: (1) Dr. Ravin's assessments of Ms. Howard's disability were submitted via "fill-in-the-blank" forms without much elaboration; (2) Dr. Ravin's Listing assessments are internally inconsistent (*i.e.*, in January 2014, Dr. Ravin determined that Ms. Howard has met Listing 1.04 since July 2011, but in July 2016, Dr. Ravin opined that Ms. Howard has met Listing 1.04 since "2004-2005."); (3) Dr. Ravin's conclusions are not supported by his notes and do not cite to objective findings ("[T]he extreme limitations that Dr. Ravin assessed are significantly disproportionate to the evidence as a whole, including his own treatment notes."); (4) Dr. Ravin is a general practitioner, thus his opinions about Ms. Howard's orthopedic issues should be given less weight than the opinions of Dr. Lorber, who is an orthopedic specialist; and (5) Dr. Ravin is less familiar with the Social Security Administration's disability program than Dr. Lorber, particularly in terms of the definitions and evidentiary requirements. R. 328–30. Notwithstanding any changes to this assessment that may occur during the ALJ's reconsideration of the evidence on remand, I find that the ALJ properly articulated her reasons for not giving Dr. Ravin's opinions controlling weight.

4. **Credibility Determination.**

Finally, Ms. Howard argues that the ALJ's determination that Ms. Howard is not fully credible is not supported by substantial evidence. ECF No. 15 at 16. The ALJ determined that Ms. Howard's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 330. Ms. Howard contends that her complaints are indeed supported by the medical evidence, and that the ALJ's flawed credibility finding unfairly impacted the overall assessment of her claim. ECF No. 15 at 16.

However, because the ALJ's assessment of Ms. Howard's credibility will inevitably be impacted by the ALJ's reassessment of the total body of evidence on remand, it is unnecessary for me to decide this issue at present.

## ORDER

For the reasons described above, the Court REVERSES and REMANDS the Commissioner's decision partially denying Ms. Howard's application for disability insurance benefits supplemental security income benefits.

DATED this 17th day of November, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge